

# IN THE
# TENTH COURT OF APPEALS

### No. 10-10-00279-CR

**ADRIAN ALEXANDER,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2009-1503-C1**

## MEMORANDUM OPINION

Appellant Adrian Alexander was convicted of aggravated assault, a second-degree felony, and sentenced to five years' imprisonment.[1] *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b) (West 2011). In two issues, Alexander contends that the evidence is insufficient to: (1) establish that he used a deadly weapon in the commission of the offense; and (2) support the trial court's order that he pay the costs of his court-

---

[1] The offense was enhanced to a first-degree felony due to Alexander's conviction on June 7, 2004 for harassment of persons in a correctional facility, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 12.42(b), 22.11(a)-(b) (West 2011).

appointed attorney and investigator, especially considering he had been found to be indigent.  We affirm as modified.

## I.  BACKGROUND

On or about August 27, 2009, John Perez was installing a new front door at a duplex in north Waco, Texas.  At some point, Perez was approached by a male later identified as Alexander.  Alexander first told Perez that he wanted to take Perez's vehicle to which Perez responded, "Go ahead.  It's insured."  Alexander then demanded that Perez give him some money so that he could get something to eat.  Perez refused to give Alexander money and, instead, offered Alexander the lunch he had in the front seat of his vehicle.  Alexander declined to take Perez's lunch and next demanded that Perez turn over his wallet.  Perez responded, "No, I ain't going to give you that either."  Alexander then stated, "I'll just take it."  Perez recalled, at that point, Alexander reached into his pants and pulled out a knife.  Though they were about twenty feet apart, Perez described the knife as being silver, metal, and about twelve inches long, though he could not tell whether the knife was sharp.  Perez also testified that:

> It [the knife] was something that you would hang on a wall, I mean, something [people] just normally wouldn't carry around, something decorative.
>
> …
>
> The design on it, for one thing, something that, I mean, collectors would put on the wall, you know, if you collected knives and stuff.

Perez recounted that Alexander waved the knife in the air and said, "Take it," which

caused Perez to feel threatened of serious bodily injury. Nevertheless, Perez stood his ground, holding in his hands the hammer and chisel he was using to install the door. Alexander subsequently turned and walked away without taking anything or causing any injuries.

Perez immediately called police to report the incident. Waco Police Officer Sam Ruiz happened to be patrolling the area near where Perez was. Perez got Ruiz's attention and told him that Alexander had tried to rob him and was walking away from the scene. Ruiz spotted Alexander and briefly pursued him. Upon seeing Ruiz, Alexander sprinted away after he had crossed a major intersection. Police eventually found Alexander squatting by a tree located in heavy brush. Detective Eric Hawkins, formerly a patrol officer for the Waco Police Department, testified that he participated in the pursuit of Alexander and that the pursuit lasted approximately ten to fifteen minutes. When police apprehended Alexander, they did not find a knife on Alexander's person. They subsequently conducted a search of the surrounding field where Alexander was found, but they did not find a knife. Hawkins noted that it is often the case that a weapon used in the commission of an offense is never found. In any event, Alexander was taken back to the scene of the crime where Perez identified him as the person who assaulted him.

Alexander was indicted for aggravated assault, and after a jury trial, he was convicted of the charged offense. *See id.* § 22.02(a)(2). The jury assessed punishment at five years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. Alexander filed a motion for new trial, which was overruled by

operation of law. *See* TEX. R. APP. P. 21.8(c). This appeal followed.

## II.    STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of a

sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the

evidence" includes evidence that was properly and improperly admitted. *Conner v.*

*State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting

inferences, we must presume that the factfinder resolved the conflicts in favor of the

prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S.Ct.

at 2792-93. Further, direct and circumstantial evidence are treated equally:

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of

an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*

*v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the

factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

### III.    KNIFE AS A DEADLY WEAPON

In his first issue, Alexander contends that the evidence was insufficient to establish that he used a deadly weapon in the commission of the charged offense. Specifically, Alexander argues that the evidence is insufficient because the victim could not tell whether the weapon was sharp and because he was never closer than twenty feet to the victim and allegedly did not move towards the victim in any way.

### A. Applicable Law

A person commits the offense of aggravated assault if he uses or exhibits a deadly weapon during the commission of an assault. TEX. PENAL CODE ANN. § 22.02(a)(2). A deadly weapon is a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. *Id.* § 1.07(a)(17)(A) (West Supp. 2011). A deadly weapon also includes anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *Id.* § 1.07(a)(17)(B). "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id.* § 1.07(a)(46).

The Penal Code also provides that an "illegal knife" is a knife with a blade over five and one-half inches; a hand instrument designed to cut or stab another being thrown; a dagger, including but not limited to a dirk, stiletto, and poniard; a bowie

knife; a sword; or a spear. *Id.* § 46.01(6) (West Supp. 2011). In addition, a "knife" is defined as "any bladed hand instrument that is capable of inflicting serious bodily injury or death by cutting or stabbing a person with the instrument." *Id.* § 46.01(7).

The Court of Criminal Appeals has held that a knife is not a deadly weapon per se. *See Robertson v. State*, 163 S.W.3d 730, 732 (Tex. Crim. App. 2005); *see also Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). It has also noted that generically describing an object "as a 'knife' does not by itself establish the object as a deadly weapon by 'design' because many types of knives have an obvious other purpose (e.g., butcher knives, kitchen knives, utility knives, straight razors, and eating utensils)." *Robertson*, 163 S.W.3d at 732. Other types of knives, such as "[b]ayonets, scimitars, and various kinds of swords," are deadly by design "because they are designed to cause death." *Id.*

Whether any particular knife is a deadly weapon by design, a deadly weapon by usage, or not a deadly weapon at all depends on the evidence. *Thomas*, 821 S.W.2d at 620. When determining the deadliness of a weapon, the jury may consider all of the facts of a case. *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). In our review of the evidence, we consider the following factors: (1) the size, shape, and sharpness of the blade; (2) the manner of its use or intended use; (3) its capacity to produce death or serious bodily injury; (4) the physical proximity of the parties; (5) the nature of any wounds inflicted; and (6) any words spoken by the assailant, such as threats. *See Brown v. State*, 716 S.W.2d 939, 946-47 (Tex. Crim. App. 1986); *see also Charette v. State*, No. 05-09-01387-CR, 2012 WL 206489, at *2 (Tex. App.—Dallas Jan. 25, 2012, no pet. h.) (mem.

op., not designated for publication). Moreover, expert or lay testimony may be sufficient to support a deadly-weapon finding. *See Tucker v. State*, 274 S.W.3d 688, 692 (Tex. Crim. App. 2008). Furthermore, the blade need not actually have caused any injuries for it to be considered a deadly weapon. *Id.* at 691.

## B. Discussion

Here, the State's evidence touches on most of the factors articulated in *Brown*. *See Brown*, 716 S.W.2d at 946-47; *see also Charette*, 2012 WL 206489, at *2. Perez stated that Alexander, who was standing about twenty feet away, waived the knife in the air while threatening to take his wallet. Perez described the knife as being silver, metal, twelve inches long, and decorative in nature. *See* TEX. PENAL CODE ANN. § 46.01(6)(A). Further, he denied that the knife resembled a butcher knife or a kitchen knife. Perez was not able to tell whether the knife was sharp; however, even a dull knife can be considered a deadly weapon if the knife is used in conjunction with "threats and gestures" that cause the complainant to fear serious bodily injury or death. *See Williams v. State*, 732 S.W.2d 777, 779 (Tex. App.—Corpus Christi 1987, no pet.) (concluding that a "butter knife" with a "rounded tip" was a deadly weapon based on its usage); *see also Charette*, 2012 WL 206489, at *4. Hawkins noted that, based on his thirteen years' experience in law enforcement, knives such as the one described by Perez are capable of causing serious bodily injury or death. *See Tucker*, 274 S.W.3d at 692; *see also Adame v. State*, 69 S.W.3d 581, 582 (Tex. Crim. App. 2002) ("With testimony that a BB gun is capable of causing serious bodily injury, it is reasonable for a jury to make a deadly weapon finding."). Hawkins also noted that, based on Perez's description of the incident, Alexander's use

of the knife would support a deadly-weapon conclusion. *See Tucker*, 274 S.W.3d at 692; *see also Adame*, 69 S.W.3d at 582.

Alviniko Ervin, Alexander's brother, testified that he and Alexander lived together with their great-grandmother, Bobbie Mitchell, and that they did not have such a knife in their house. But Ervin's testimony was undermined by his admission that other parts of his testimony were untrue. Mitchell stated that she had never seen Alexander in possession of a weapon and that they did not have such a knife in their house. To the extent that Ervin's and Mitchell's testimony conflicts with Perez's testimony, we note that the jury is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *See Chambers*, 805 S.W.2d at 461. And in convicting Alexander of aggravated assault, the jury clearly did not believe Ervin's and Mitchell's testimony regarding Alexander's possession of the knife. *See id.*

Considering all of the evidence in the light most favorable to the verdict, any rational jury could have found beyond a reasonable doubt that the twelve-inch-long knife, based on its design and manner of use or intended use, was a deadly weapon. *See Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Thomas*, 821 S.W.2d at 620; *Brown*, 716 S.W.2d at 946-47; *see also Adame*, 69 S.W.3d at 582 (holding that "in proving use of a deadly weapon other than deadly weapon per se, the State need [only show] that the weapon used was capable of causing serious bodily injury or death in its use or intended use"). We do not find to be persuasive Alexander's argument that, because he was twenty feet away from Perez, the knife could not be

considered a deadly weapon. The distance between the parties is but one of many factors we are to consider. *See Brown*, 716 S.W.2d at 946-47; *see also Charette*, 2012 WL 206489, at *2. Accordingly, we overrule Alexander's first issue.

### IV. COURT-APPOINTED ATTORNEY'S AND INVESTIGATOR'S FEES

In his second issue, Alexander complains that there is insufficient evidence to support the trial court's assessment of court-appointed attorney's and investigator's fees. In particular, Alexander argues that because he was determined to be indigent before trial, the trial court improperly ordered him to pay $1,992.75 in attorney's fees and $750 in investigator's fees.

For the purposes of assessing attorney's fees, once an accused is found to be indigent, he is presumed to remain so throughout the proceedings absent proof of a material change in his circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2011); *see also Mayer v. State*, No. 10-10-00302-CR, 2011 WL 653095, at *2 (Tex. App.—Waco Feb. 23, 2011, pet. ref'd) (mem. op., not designated for publication). Furthermore, the record must reflect some factual basis to support the determination that Alexander was capable of paying all or some of his attorney's fees at the time of the judgment. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2011); *Barrera v. State*, 291 S.W.3d 515, 518 (Tex. App.—Amarillo 2009, no pet.); *see also Stevenson v. State*, No. 10-09-00358-CR, 2011 WL 4978316, at *1 (Tex. App.—Waco Oct. 19, 2011, no pet.) (mem. op., not designated for publication).

Here, the State concedes that there is insufficient evidence in the record to support the assessment of court-appointed attorney's and investigator's fees against

Alexander.  In such cases, the proper remedy is to reform the judgment by deleting the attorney's fees and investigator's fees.  *See Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010); *see also Cain v. State*, No. 10-11-00345-CR, 2011 WL 4837723, at *4 (Tex. App.—Waco Oct. 12, 2011, pet. ref'd) (mem. op., not designated for publication) (modifying the judgment to delete the finding ordering appellant to pay his court-appointed attorney's and investigator's fees).  We therefore sustain Alexander's second issue and modify the judgment to delete the finding that orders him to pay his court-appointed attorney's and investigator's fees.

## V.    CONCLUSION

We modify the trial court's judgment to delete the finding that orders Alexander to pay his court-appointed attorney's and investigator's fees.  We affirm the judgment as modified.


                                    REX D. DAVIS
                                    Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed as modified
Opinion delivered and filed April 18, 2012
Do not publish
[CR25]