IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0865-04






TREVER ROBERTSON, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


FREESTONE COUNTY





 Keller, P.J., delivered the opinion of the Court, joined by Price, Womack,
Johnson, Keasler, Hervey, Holcomb, and Cochran, JJ. Meyers, J. did not participate.


 The question in this case is whether a switchblade knife, that was viewed by the fact-finder
and introduced into evidence, was a deadly weapon by design. We conclude that the evidence was
sufficient to show that it was. Consequently, we reverse the judgment of the court of appeals.

I. BACKGROUND


A. Facts


 After stopping appellant for traffic violations, an officer spotted drug paraphernalia in his car
and ordered appellant to empty his pockets. His pockets contained $460 in cash and a switchblade
knife with a white residue on its tip. A subsequent strip-search of appellant at the jail revealed
marijuana, cocaine, and methamphetamine.

 Appellant was charged with possession of methamphetamine with intent to deliver. At trial,
the State introduced testimony regarding the circumstances surrounding the confiscation of
appellant's switchblade knife. The officer who discovered the knife testified that it initially looked
like a folding knife, but he had difficulty pulling it open until he noticed a button on the side. When
he pressed the button, the knife flew open, at which point the officer realized the knife was an illegal
spring-loaded, switchblade knife. No further description of the knife was given, and the police
officer did not testify that it was a deadly weapon, but the knife was admitted into evidence. 

 Appellant was convicted by the jury and sentenced by the court to imprisonment for fifteen
years, and the trial court made and entered a deadly weapon finding. 

B. Court of Appeals Opinion 


 On appeal, appellant alleged, among other things, that the evidence was insufficient to
support the deadly weapon finding. The court of appeals agreed, ordering that the deadly weapon
finding be deleted from the judgment. (1) Finding no evidence that the knife "was manifestly designed,
made or adapted for the purpose of inflicting death or serious bodily injury," the court of appeals
concluded that the knife was not a deadly weapon by design. (2) 

 Chief Justice Gray dissented. He stated, "If anyone has any question that the knife at issue
is a deadly weapon, all he or she needs to do is examine it." (3) The Chief Justice explained that the
knife in question had a three-inch-long blade that was "symmetrical and sharpened down both sides,
coming to a point in the centerline of the holding position of the handle." (4) He further described the
knife as a "switchblade," with a spring-loaded blade that "swings into an extended and locked
position with the push of a button." (5) The handle of the knife is also "symmetrical, with a built-in
swell at the hilt to act as a guard, and the entire handle is coated in a rubberized, slip resistant
material." (6) 

II. ANALYSIS


 What constitutes a "deadly weapon," for the purpose of determining whether an affirmative
finding of a deadly weapon should be made, is determined by §1.07 of the Texas Penal Code. (7) One
of §1.07's two definitions of "deadly weapon" is at issue here: the definition involving weapons that
are deadly by "design." (8) A weapon is considered to be a "deadly weapon" by "design" if it is "a
firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or
serious bodily injury." (9) Under this definition, an object's physical characteristics determine whether
a weapon is deadly by design. (10) Moreover, an object can be a deadly weapon by "design" only if it
has no "obvious purpose apart from causing death or serious bodily injury." (11) For this reason,
describing an object generically as a "knife" does not by itself establish the object as a deadly
weapon by "design" because many types of knives have an obvious other purpose (e.g. butcher
knives, kitchen knives, utility knives, straight razors, and eating utensils). (12) However, a particular
variety of knife may be a deadly weapon by design. (13) Bayonets, scimitars, and various kinds of
swords are examples of knives that are deadly by design, because they are designed to cause death. (14)

 The Texas Penal Code defines a switchblade knife as "any knife that has a blade that folds,
closes, or retracts into the handle or sheath, and that: (A) opens automatically by pressure applied
to a button or other device located on the handle; or (B) opens or releases a blade from the handle
or sheath by the force of gravity or by the application of centrifugal force." (15) The evidence
unquestionably shows that appellant's knife was a switchblade knife under the subsection (A)
definition. The question is whether a switchblade knife can qualify as a deadly weapon by "design,"
and if so, under what circumstances.

 Statutes from several other states have expressly defined or referred to switchblade knives
as deadly weapons, (16) and at least one state supreme court has held a switchblade knife to be a
weapon that is "inherently dangerous as a matter of law" even without an explicit statutory
directive. (17) Alabama's "deadly weapon" definition is virtually identical to the deadly weapon by
"design" subsection of the Texas definition, except that the Alabama statute appends to the end of
its definition an illustrative list, which, significantly, includes a "switchblade knife" as a deadly
weapon by design. (18) Missouri's statute draws a distinction between "deadly weapons" and
"dangerous instruments." (19) An examination of the provisions reveals a rough correspondence,
respectively, with the Texas scheme of classifying deadly weapons by design and usage. (20) 
Importantly, a "switchblade knife" is specified as a "deadly weapon" under Missouri's counterpart
to the deadly weapon by "design" definition. (21)

 We need not say, as these jurisdictions do, that a switchblade knife is always and necessarily
a deadly weapon by design. It is enough in this case to recognize that a switchblade knife can be a
deadly weapon by design, and the switchblade knife before us is indeed such a weapon. The
combination of this knife's physical characteristics reveals its inherently dangerous and deadly
nature. The switchblade nature of the knife enables the blade to be deployed quickly, swinging
forward with the push of a button. The three-inch blade is large enough to inflict serious wounds. 
The handgrip facilitates stabbing by keeping the knife securely in the wielder's hand. Likewise,
stabbing is facilitated by the fact that the knife locks into place. Further, the knife's double-edged
blade appears designed for stabbing rather than slicing. Because the switchblade knife was admitted
into evidence, the fact-finder was in a position to observe all of these characteristics. Not only was
this knife inherently dangerous, but it had no apparent purpose other than to serve as a deadly
weapon. It is illegal in Texas to possess a switchblade knife, except under specified circumstances
not applicable here. (22) While we need not reach the question of whether any other weapons that are
prohibited under §46.05 are deadly weapons under §1.07(a)(17)(A), the fact that a switchblade knife
is a prohibited weapon indicates, at the least, that under Texas law, switchblade knives have no
obvious non-deadly purpose.

 Perhaps the court of appeals believed that the evidence was insufficient because there was
very little testimony at trial describing the switchblade knife. But, as we have discussed, an object's
physical characteristics may determine whether the object is deadly by design. One appropriate
method of showing the physical characteristics of a weapon is to introduce the weapon itself into
evidence. The trial court, as the fact-finder, had the opportunity to examine the weapon and ascertain
for itself whether the weapon had physical characteristics that revealed its deadly nature. The court
of appeals should have considered not just the testimony concerning the knife, but the knife itself,
in determining whether the evidence adduced at trial was constitutionally sufficient to support a
rational finding that the knife was "manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury." We have viewed the knife, and we find that the evidence
is sufficient to support such a finding. 

 The judgment of the court of appeals is reversed, and the trial court's judgment is affirmed
in all respects. 

 Keller, Presiding Judge

Date delivered: May 18, 2005

Publish
1. Robertson v. State, 137 S.W.3d 807, 813 (Tex. Crim. App. 2004). The trial court's
judgment was affirmed in all other respects. Id.
2. Id.
3. Id. at 813 (Gray, C.J. dissenting).
4. Id. at 813-814.
5. Id. at 814.
6. Id.
7. Tex. Code Crim. Proc. 42.12, §3g(a)(2).
8. See Thomas v. State, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991)(shorthand reference
to the two definitions as "design" and "usage"). The court of appeals did not explicitly address
whether the switchblade knife was a deadly weapon by "usage" under Tex. Pen. Code
§1.07(a)(17)(B), and the State advances no complaint in that regard in its petition for
discretionary review. 
9. Tex. Pen. Code §1.07(a)(17)(A).
10. McCain v. State, 22 S.W.3d 497, 502 (Tex. Crim. App. 2000).
11. Id.
12. Id. at 502-503 (discussing Thomas, 821 S.W.2d at 620).
13. Thomas, 821 S.W.2d at 620.
14. Id.
15. Tex. Pen. Code §46.01(11).
16. Buchannon v. State, 554 So. 2d 477, 493 n. 11 (Ala. Crim. App.), cert. denied, 554 So.
2d 494 (Ala. 1989)(citing Ala. Code, §13A-1-2(11)); State v. Manley, 195 Conn. 567, 576, 489
A.2d 1024, 1029 (1985)(citing Conn. Gen. Stat. §53a-3 (6)); Johnson v. State, 711 A.2d 18, 27
(Del. 1998)(citing Del. C. §222(5); United States v. Shepard, 515 F.2d 1324, 1327 (DC Cir.
1975)(citing D.C. Code §22-3202 [now §22-4502]); State v. Darynani, 774 So. 2d 855, 857 (Fla.
App. 2000)(citing Fla. Stat. §790.225); Ridley v. State, 232 Ga. 646, 646 n. 1, 208 S.E.2d 466,
466 n. 1 (1974)(citing Ga. Code Ann. §77-361); In re T.G., 285 Ill. App. 3d 838, 844-845, 674
N.E.2d 919, 925 (1996), appeal denied, 172 Ill. 2d 552, 679 N.E.2d 380 (1997)(citing 720 ILCS
5/33A-1); In re Colby H, 362 Md. 702, 709-710, 766 A.2d 639, 643 (2001)(citing Md. Ann.
Code, Art. 27, §36); McNeely v. State, 277 So. 2d 435, 437 (Miss. 1973); State v. Williams, 126
S.W.3d 377, 384 (Mo. 2004)(citing R.S. Mo. §556.061(10)); N.H. R.S.A. 159:3; N.M. Stat. Ann.
§30-1-12; Davis v. Henderson, 468 F. Supp. 628, 632 (S.D.N.Y. 1979)(citing N.Y. Penal Law
§10.00(12)). 
17. State v. Hartford, 130 Ariz. 422, 427, 636 P.2d 1204, 1209 (1981), cert. denied, 456
U.S. 933 (1982).
18. Definition of "deadly weapon" under the Alabama Code:


A firearm or anything manifestly designed, made, or adapted for the purposes of
inflicting death or serious physical injury. The term includes, but is not limited to,
a pistol, rifle, or shotgun; or a switch-blade knife, gravity knife, stiletto, sword, or
dagger; or any billy, black-jack, bludgeon, or metal knuckles.


Ala. Code 13A-1-2(7). See also Buchannon, 554 So. 2d at 493 n. 11 (citing former §13A-1-2(11)).
19. Williams, 126 S.W.3d at 384.
20. Id. Missouri defines "deadly weapon" as "any firearm, loaded or unloaded, or any
weapon from which a shot, readily capable of producing death or serious physical injury may be
discharged, or a switchblade knife, dagger, billy, blackjack or metal knuckles." Id. (citing R.S.
Mo. §556.061(10)). "Dangerous instrument" is defined as "any instrument, article or substance,
which, under the circumstances in which it is used, is readily capable of causing death or other
serious physical injury." Id. (citing R.S. Mo. §556.061(9)).
21. Id. (citing R.S. Mo. §556.061(10)).
22. Tex. Pen. Code §46.05(a)(5), (d)(1).