PD-0762-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/23/2015 1:39:45 PM
Accepted 6/24/2015 11:43:00 AM
ABEL ACOSTA
CLERK

# NO. PD-_____

## IN THE
## COURT OF CRIMINAL APPEALS OF TEXAS

# STEPHEN SELLERS

Appellant

v.

# STATE OF TEXAS

Appellee

## APPELLANT'S PETITION
## FOR DISCRETIONARY REVIEW

Petition from the 19th Judicial District Court of McLennan County, Texas
Trial Court Cause Number 2013-2242-C1 and
Cause Number 10-14-00226-CR in the Tenth Court of Appeals of Texas

**Chelsea Tijerina**
State Bar No. 24076733
E-mail: attorneychelsea@gmail.com

FILED IN
COURT OF CRIMINAL APPEALS

June 24, 2015

ABEL ACOSTA, CLERK

OFFICE OF SIMER & TETENS
3706 Bellmead Drive
Waco, Texas 76705
(254) 412-2300
(888) 317-7610—Facsimile

## ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

Appellant, pursuant to Rule of Appellate Procedure 38.1(a), provides the following list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel.

Appellant:

**Stephen Sellers**
TDCJ # 01948905
Joe F. Gurney Transfer Facility
1385 F.M. 3328
Palestine, Texas 75803

Trial Court Judge:

**Hon. Ralph Strother**
19th Judicial District Court Judge
McLennan County Courthouse
501 Washington Avenue – Suite 303
Waco, Texas 76701
Telephone: 254-757-5081

Trial Counsel for Appellant:

**Josh Tetens**
**Chelsea Tijerina**
Simer & Tetens
3706 Bellmead Drive
Waco, Texas 76705
Telephone: 254-412-2300

Appellate Counsel for Appellant:

**Chelsea Tijerina**
Simer & Tetens
3706 Bellmead Drive
Waco, Texas 76705
Telephone: 254-412-2300

Trial Counsel for State:

**Robbie Moody**
**Evan O'Donnell**
McLennan County District Attorney's Office
219 North 6th Street, Suite 200
Waco, Texas 76701

Appellate Counsel for State:

**Sterling Harmon**
**Gabriel Price**
McLennan County District Attorney's Office
219 North 6th Street, Suite 200
Waco, Texas 76701

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL..................................................................... 1

INDEX OF AUTHORITIES.................................................................................. 4

STATEMENT REGARDING ORAL ARGUMENT........................................................ 6

STATEMENT OF THE CASE/
STATEMENT OF PROCEDURAL HISTORY............................................................. 6

GROUND FOR REVIEW................................................................................... 8

      The Waco Court of Appeals disregarded established case law from this
Court and from sister courts of appeal to find the evidence legally sufficient.

ARGUMENT................................................................................................ 8

    I.      Reason for Granting Review....................................................... 9

    II.     Factual Basis....................................................................... 9

    III.    Case Law

           The distance between the defendant and the complaining witness
           proves the seminal factor in determining whether a knife is a
           deadly weapon......................................................... 13

    IV.    Conclusion......................................................................... 20

PRAYER FOR RELIEF..................................................................................... 21

CERTIFICATE OF SERVICE.............................................................................. 21

CERTIFICATE OF COMPLIANCE....................................................................... 22

APPENDIX:        *Sellers v. State*, No. 10-14-00226-CR, 2015 Tex. App. LEXIS 4702 (Tex. App.—Waco May 7, 2015, no pet. h.).

# INDEX OF AUTHORITIES

**Texas Cases:**                                                                            Page No.

*Alexander v. State*, No. 10-10-00279-CR, 2012 Tex. App. LEXIS 3125 (Tex. App.—Waco Apr. 18, 2012, pet. ref'd) (mem. op., not designated for publication)................. 9

*Alvarez v. State*, 566 S.W.2d 612 (Tex. Crim. App. 1978)................ 8, 9, 13, 15, 16, 17, 18, 19

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) (plurality op.).......................... 19

*Citizens Nat'l Bank in Waxahachie v. Scott*, 195 S.W.3d 94 (Tex. 2006)........................... 19

*Davidson v. State*, 602 S.W.2d 272 (Tex. Crim. App. 1980)...................................... 8, 13

*Fregia v. State*, 185 S.W. 11 (Tex. Crim. App. 1916)............................. 8, 9, 13, 14, 15, 19

*Grover v. State*, No. 14-04-00672-CR, 2005 WL 3435313 (Tex. App.—Houston [14th Dist.] Dec. 15, 2005, pet. ref'd) (mem. op., not designated for publication)........... 8, 9, 15

*Herbert v. State*, 631 S.W.2d 585 (Tex. App.—El Paso 1982, no pet.)...................... 8, 9, 16

*Lucero v. State*, 915 S.W.2d 612 (Tex. App.—El Paso 1996, pet. ref'd)...................... 8, 9, 16

*Luna v. State*, No. 01-98-01079-CR, 2000 WL 730661) (Tex. App.—Houston [1st Dist.] June 8, 2000, no pet.) (mem. op., not designated for publication)................. 8, 9, 16

*McCain v. State*, 22 S.W.3d 497 (Tex. Crim. App. 2000) (en banc)........................... 17, 18

*Petrie v. State*, No. 10-13-00004-CR, 2014 Tex. App. LEXIS 2829 (Tex. App.—Waco Mar. 13, 2014, pet. ref'd) (mem. op., not designated for publication)......................... 9

*Rogers v. State*, 877 S.W.2d 498 (Tex. App.—Fort Worth 1994, pet. ref'd)................. 8, 9, 16

*Wade v. State,* 951 S.W.2d 886 (Tex. App.—Waco 1997, pet ref'd)........................ 8, 9, 16


**Federal Case:**                                                                            Page No.

*Jackson v. Virginia*, 443 U.S. 307 (1979)............................................................ 19

**State Statutes:** Page No.

Tex. R. App. P. 47.4.................................................................... 19

Tex. R. App. P. 66.3.................................................................. 9, 20

**Miscellaneous:** Page No.

43B George E. Dix et al., *Texas Practice Series: Criminal Practice and Procedure* § 57:32 (3d ed. 2013).................................................. 20

# STATEMENT REGARDING ORAL ARGUMENT

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

Mr. Stephen Sellers requests that oral arguments be granted. Appellant believes that this Court would benefit from arguments.

# STATEMENT OF THE CASE/
# STATEMENT OF PROCEDURAL HISTORY

This is a criminal case in which Stephen Sellers was convicted of possession of a controlled substance in the amount of one gram or more but less than four grams with intent to deliver.[1] In Cause Number 2013-2242-C1, Mr. Sellers was indicted as follows:

> "Stephen Kenneth Lane Sellers, hereinafter called Defendant, on or about the 25th day of September, A.D., 2013 in said county and state did then and there knowingly possess, with intent to deliver, a controlled substance, namely, methamphetamine, in an amount of one gram or more but less than four grams."[2]

The State also submitted a special plea the jury alleging that "[Appellant] used or exhibited a deadly weapon, to wit, a knife, during the commission of said offense or during immediate flight therefrom."[3]

---

[1] (I C.R. at 42).
[2] (I C.R. at 4–5); (3 R.R. at 7).
[3] (I C.R. at 36); (3 R.R. at 8).

The case was tried to a jury on July 14 and 15, 2014 in the 19th Judicial District Court.[4] The jury found Appellant guilty of the offense of possession of a controlled substance with intent to deliver.[5] The jury also found the deadly weapon allegation true.[6] Appellant elected that the jury assess punishment, and the jury sentenced Appellant to 40 years in the Texas Department of Criminal Justice – Institutional Division.[7]

Appellant timely filed a Notice of Appeal on July 21, 2014.[8] On May 7, 2015, the Tenth Court of Appeals overruled each of the issues that Appellant submitted on appeal.[9] Thereafter, Appellant filed a Motion for Rehearing which the Tenth Court of Appeals denied on June 4, 2015. Appellant's brief is due on or before July 7, 2015.

---

[4] (I C.R. at 3).
[5] (4 R.R. at 120).
[6] (4 R.R. at 121).
[7] (4 R.R. at 174).
[8] (I C.R. at 59).
[9] *Sellers v. State*, No. 10-14-00226-CR, 2015 Tex. App. LEXIS 4702 at *10 (Tex. App.—Waco May 7, 2015 no pet. h.) (mem. op., not designated for publication).

## GROUND FOR REVIEW

The Waco Court of Appeals found the evidence of a deadly weapon sufficient in this case in contravention of established case law from this Court and from sister courts of appeals.

## ARGUMENT

Texas case law holds that the distance between the defendant and the alleged target should be the paramount inquiry in ascertaining whether a knife is a deadly weapon.[10] Despite settled law from this Court and from sister courts of appeal, the Waco Court of Appeals wholly disregarded the distance between Mr. Sellers and the complaining witness and found the evidence legally sufficient to support a deadly weapon finding.[11] Additionally, the Waco court's opinion lacked sufficient reasoning to support its conclusion. Therefore, this Honorable Court should grant review.

---

[10] *Alvarez v. State*, 566 S.W.2d 612, 613 (Tex. Crim. App. 1978); *Fregia v. State*, 185 S.W. 11, 12 (Tex. Crim. App. 1916); *Davidson v. State*, 602 S.W.2d 272, 274 (Tex. Crim. App. 1980); *Herbert v. State*, 631 S.W.2d 585, 586 (Tex. App.—El Paso 1982, no pet.); *cf. Wade v. State,* 951 S.W.2d 886, 893 (Tex. App.—Waco 1997, pet ref'd); *Rogers v. State*, 877 S.W.2d 498, 500 (Tex. App.—Fort Worth 1994, pet. ref'd); *see also Lucero v. St*ate, 915 S.W.2d 612, 615 (Tex. App.—El Paso 1996, pet. ref'd); *Grover v. State*, No. 14-04-00672-CR, 2005 WL 3435313, at *4 (Tex. App.—Houston [14th Dist.] Dec. 15, 2005, pet. ref'd) (mem. op., not designated for publication); *Luna v. State*, No. 01-98-01079-CR, 2000 WL 730661, at *3 (Tex. App.—Houston [1st Dist.] June 8, 2000, no pet.) (mem. op., not designated for publication).

---

## I.    Reason for Granting Review

The Tenth Court of Appeals' decision in this case conflicts with decisions from this Honorable Court[12] as well as with decisions from sister courts of appeal.[13] Additionally, the Waco Court of Appeals "has so far departed from the accepted and usual course of judicial proceedings… as to call for an exercise of the Court of Criminal Appeals' power of supervision."[14]

## II.    Factual Basis

On September 25, 2013, a female officer was driving her squad car scouring the streets of McLennan County for a burglary suspect.[15] The officer turned off

---

[11] *Sellers*, 2015 Tex. App. LEXIS 4702 at *10.

[12] TEX. R. APP. P. 66.3(c); *see Alvarez v. State*, 566 S.W.2d 612, 613–614 (Tex. Crim. App. 1978); *Fregia v. State*, 185 S.W. 11, 12 (Tex. Crim. App. 1916).

[13] TEX. R. APP. P. 66.3(b); *Herbert v. State*, 631 S.W.2d 585, 586 (Tex. App.—El Paso 1982, no pet.); *cf. Wade v. State*, 951 S.W.2d 886, 893 (Tex. App.—Waco 1997, pet ref'd) (the Court found that a six-inch blade was "capable of causing death or serious bodily injury" where the defendant had the victim pinned by one arm and pulled out the blade with the other arm); *Rogers v. State*, 877 S.W.2d 498, 500 (Tex. App.—Fort Worth 1994, pet. ref'd) (although the knife in that case was closed, the court held it was solely the distance (two feet) between the alleged attacker and the victim that rendered the closed knife a "deadly weapon"); *see also Lucero v. State*, 915 S.W.2d 612, 615 (Tex. App.—El Paso 1996, pet. ref'd); *Grover v. State*, No. 14-04-00672-CR, 2005 WL 3435313, at *4 (Tex. App.—Houston [14th Dist.] Dec. 15, 2005, pet. ref'd) (mem. op., not designated for publication); *Luna v. State*, No. 01-98-01079-CR, 2000 WL 730661), at *3 (Tex. App.—Houston [1st Dist.] June 8, 2000, no pet.) (mem. op., not designated for publication) (recognizing distance between the assailant and the victim is a critical evidentiary factor in whether the knife is a deadly weapon); *but see Alexander v. State*, No. 10-10-00279-CR, 2012 Tex. App. LEXIS 3125, at *4 (Tex. App.—Waco Apr. 18, 2012, pet. ref'd) (mem. op., not designated for publication) *and see Petrie v. State*, No. 10-13-00004-CR, 2014 Tex. App. LEXIS 2829, at *6 (Tex. App.—Waco Mar. 13, 2014, pet. ref'd).

[14] TEX. R. APP. P. 66.3(f).

[15] (3 R.R. at 15, 18).

her headlights to more inconspicuously hunt for the perpetrator.[16] While driving with her headlights blacked out, the officer observed "[Appellant] walking in the middle of the street," a "detainable offense."[17] Appellant "went behind another vehicle."[18] The officer then activated her overhead lights at which point Appellant extricated himself from behind the vehicle and "came out toward the patrol car."[19] The officer asked Appellant what he was doing and Appellant responded that he was walking to a friend's house.[20] Appellant motioned with a cigarette in his left hand[21] while holding a Gerber multi-tool and a cell phone at his right side in his right hand.[22] At this point, Appellant and the officer were standing several feet apart.[23] Appellant made no threatening gestures or statements during his encounter with the officer.[24]

The officer told Appellant that she "saw the knife" in his hand and "asked him to set it down on the ground and then step away from it. Anything that can hurt me, any sharp objects, anything like that, is a concern for me. I don't want to

---

[16] (3 R.R. at 16).
[17] (3 R.R. at 17).
[18] (3 R.R. at 17).
[19] (3 R.R. 17–18).
[20] State's Exhibit 1: in-car video.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*

be stabbed."[25] Appellant immediately complied and set the knife down on the street.[26] The Gerber knife was later released to Appellant's girlfriend and did not make it into evidence.[27] Although there was no testimony in the reporter's record regarding the distance between Appellant and the officer while Appellant had the knife in his hand, the video demonstrates that Appellant was several feet away from the officer. The chart below summarizes the video that captured the interaction between Appellant and the officer:

| Time | Action |
|------|--------|
| 0:37 | The officer blacks out lights of cop car. |
| 0:46 | The officer turns left onto a dark street. |
| 0:51 | Appellant walks across the dark street. |
| 1:00 | The officer activates her vehicle's headlights. |
| 1:05 | Appellant walks out onto the street from behind a vehicle. |
| 1:09 | Officer: "What are you doing here?<br> - The officer stands several feet away from Appellant. |
| 1:14 | Appellant: "Walking to my friend's house where my girl lives."<br> - Appellant motions with a cigarette in his left hand.<br> - The Gerber multi-tool is at Appellant's right side in his right hand. The right side of Appellant's body is facing away from the officer. |
| 1:15 | Officer: "Why don't you use the sidewalk?"<br> - Officer walks toward Appellant. Officer does not appear to be in fear of Appellant. |
| 1:18 | Appellant: "I stay in the streets 'cause I don't like walking down that way – have someone walk out on me." |
| 1:21 | Officer: "Can you show me your hand? No gun or –" |

---

[25] (3 R.R. at 19).
[26] State's Exhibit 1: in-car video.
[27] (3 R.R. at 49).

| | |
|---|---|
| 1:22 | Appellant: "Yeah, that's why I was walking with it like that.<br>- Appellant takes the Gerber multi-tool out of his right hand with his left hand. The knife is bladed out. Appellant makes no threatening motions.<br>- Appellant holds the knife up for the officer to see. |
| 1:24 | Officer: "Oh okay, well, can you just put that down for me – the knife?" |
| 1:26 | Appellant: "Sure."<br>- Appellant immediately complies and sets the knife down. |
| 1:28 | Officer: "All right, thank you. I appreciate it." |
| 1:29 – 2:54 | The officer and Appellant converse calmly. The officer does not appear to be frightened of Appellant. |
| 2:55 | The officer walks toward Appellant. The officer is still quite a few feet away from Appellant. |
| 2:56 – 3:37 | The officer continues questioning Appellant without apparent fear. |
| 3:28 | Officer: "So let me ask you when you saw my car – 'cause I know I was blacked out." |
| 3:31 | Appellant: "I saw a car and I didn't see no lights." |
| 3:32 | Officer: "Uh huh." |
| 3:33 | Appellant: "That's why I –I"<br>- Appellant motions to the area behind the vehicle. |
| 3:35 | Officer: "That's why you went over there. Okay, 'cause I was like wondering there." |
| 3:41 | Appellant: "No, okay, what would you think – you see a car coming up –" |
| 3:43 | Officer: "Oh no, I agree. |
| 3:44 | Appellant: "Shoooot." |
| 3:45 | Officer: "Especially blacked out. That would've scared the heck out of me. Do me a favor – take a step back from here, okay. I'm just going to bring this over here."<br>- Per the officer's instruction, Appellant takes a step backward.<br>- The officer steps forward toward Appellant to retrieve the knife and picks up the knife off the street. |
| 3:51 | Officer: "All right, you can come back over here." |
| 3:56 | Officer: "Just come back over here for me." |

| | - Per the officer's instruction, Appellant takes a few steps toward the officer.<br>- Appellant talks on his cell phone and continues smoking his cigarette.<br>- Appellant is still many feet away from the officer. |
| --- | --- |

The officer then ran Appellant's name through a State of Texas and national check and determined that Appellant had a child support warrant out for his arrest.[28] At that point, the officer arrested Appellant.[29] After arresting Appellant, the officer ventured behind the vehicle from whence Appellant had exited initially[30] and discovered a black pouch[31] containing "scales, methamphetamine, a little tray to weigh the methamphetamine and baggies."[32]

## III.   Case Law

This Honorable Court has found that the physical proximity of the victim to the knife represents the dominant factor in determining whether a knife is a deadly weapon.[33] Where the evidence does not show that the victim is within "striking distance by means of the use of the knife," the evidence does not support that the

---

[28] (3 R.R. at 22).

[29] (3 R.R. at 22, 24).

[30] (3 R.R. at 24).

[31] *Id.*

[32] *Id*; (3 R.R. at 72).

[33] *Alvarez v. State*, 566 S.W.2d 612, 613 (Tex. Crim. App. 1978); *Fregia v. State*, 185 S.W. 11, 12 (Tex. Crim. App. 1916); *Davidson v. State*, 602 S.W.2d 272, 274 (Tex. Crim. App. 1980).

knife is deadly by use.[34] In Mr. Sellers' case, the Waco Court of Appeals specifically noted that Appellant was "about 5 feet" from the officer when he had the knife in his hand,[35] impliedly finding that the officer was outside of the zone of danger from the knife. Although this Court and sister courts of appeal have focused on the importance of the distance between a defendant in possession of a knife and the complaining witness, the Tenth Court of Appeals ignored the distance factor entirely and held that the evidence in Mr. Sellers' case supported a finding that the Gerber knife was a deadly weapon.[36]

### A. Texas Courts Hold that a Knife is a Deadly Weapon by Use only if the Victim is within the Zone of Danger of the Knife.

#### i. Case Law from this Honorable Court

In *Fregia*, this Court noted that to constitute a deadly weapon, the complaining witness must be "within such distance" that a defendant could inflict "an injury upon the alleged assaulted party by the use of the means employed."[37] In that case, this Court found that the distance between the parties or whether the alleged victim "was in danger of being cut by the knife" was "too uncertain and indefinite…to show that he was within striking distance by means of the use of the

---

[34] *Fregia v. State*, 185 S.W. 11, 12 (Tex. Crim. App. 1916).
[35] *Sellers v. State*, No. 10-14-00226-CR, at *9–10 (Tex. App.—Waco May 7, 2015 no pet. h.) (mem. op., not designated for publication).
[36] *Id.* at *8–9.

knife."[38]

Decades later, in *Alvarez*, this Court considered whether a defendant's holding a linoleum knife and advancing to within three or four feet of an officer provided sufficient evidence of a deadly weapon.[39] In that case, the officer pointed his service revolver at the defendant and ordered the defendant to drop his knife.[40] The defendant took a swing at the officer with the knife and the officer shot the defendant in the leg.[41] The defendant continued advancing toward the officer wielding the knife until the officer threatened to kill the defendant.[42]

Evaluating the evidence for legal sufficiency, the Court of Criminal Appeals in *Alvarez* noted the following: (1) the officer did not suffer any wounds, (2) the record reflected no testimony as to the size of the knife's blade, although the arresting officer "testified it looked sharp," and (3) the officer testified "that he was in fear of serious bodily injury or death while the appellant brandished the knife."[43] Taking these factors into account, this Court found that the evidence

[37] *Fregia*, 185 S.W. at 12.

[38] *Id.* (the Court noted that had the defendant possessed a "pistol" instead of a knife and the defendant was shooting at the victim within a short range, the Court "would have had a different proposition").

[39] *Alvarez v. State*, 566 S.W.2d 612, 613–614 (Tex. Crim. App. 1978).

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at 614.

regarding "the manner of its use or intended use insufficient to show that the linoleum knife was capable of causing death or serious bodily injury."[44]

### ii.    Case Law from Lower Appellate Courts

Texas courts of appeal have held that *Alvarez* stands for the proposition that the "critical evidentiary factor in that case was the distance between the actor and the complainant at the time of the assault."[45]

In *Herbert*, the Eighth Court of Appeals considered the sufficiency of the evidence to support a deadly weapon finding where the defendant held a kitchen knife to his wife's throat and threatened to kill her.[46] The court in *Herbert* distinguished *Alvarez* as follows:

> "The critical evidentiary factor [in *Alvarez*] was the distance between the actor and the complaint at the time of the assault. Brandishing a three-inch blade at a distance of six feet or a linoleum knife at a distance of four feet

---

[44] *Id.*

[45] *Herbert v. State*, 631 S.W.2d 585, 586 (Tex. App.—El Paso 1982, no pet.); *cf. Wade v. State*, 951 S.W.2d 886, 893 (Tex. App.—Waco 1997, pet ref'd) (the Court found that a six-inch blade was "capable of causing death or serious bodily injury" where the defendant had the victim pinned by one arm and pulled out the blade with the other arm); *Rogers v. State*, 877 S.W.2d 498, 500 (Tex. App.—Fort Worth 1994, pet. ref'd) (although the knife in that case was closed, the court held it was solely the distance (two feet) between the alleged attacker and the victim that rendered the closed knife a "deadly weapon"); *see also Lucero v. State*, 915 S.W.2d 612, 615 (Tex. App.—El Paso 1996, pet. ref'd); *Grover v. State*, No. 14-04-00672-CR, 2005 WL 3435313, at *4 (Tex. App.—Houston [14th Dist.] Dec. 15, 2005, pet. ref'd) (mem. op., not designated for publication); *Luna v. State*, No. 01-98-01079-CR, 2000 WL 730661), at *3 (Tex. App.—Houston [1st Dist.] June 8, 2000, no pet.) (mem. op., not designated for publication) (recognizing distance between the assailant and the victim is a critical evidentiary factor in whether the knife is a deadly weapon).

[46] *Herbert*, 631 S.W.2d at 585.

did not constitute a manner of use posing a sufficient threat of serious bodily injury or death to justify the verdict. From both a practical and legal standpoint, the effective range of the weapon is of primary consideration in categorizing an instrument as deadly. This, more than any other factor, has led to the different treatment of firearms and knives in making this determination. The distance factor, alone, distinguishes… *Alvarez* from the present case, to the extent of producing a different result."[47]

### iii.     *McCain did Not Eliminate the Zone of Danger Requirement for a Knife to Constitute a Deadly Weapon by Use.*

The Waco Court of Appeals relied on this Court's holding in *McCain* for the proposition that a knife may constitute a deadly weapon if it is *capable* of causing deadly force, even if the actor has no intention of actually using the deadly force.[48]

In *McCain*, the Texas Court of Criminal Appeals found that the mere carrying of a "butcher knife during such a violent attack as occurred in the present case was legally sufficient for a fact finder to conclude that the 'intended use' for the knife was that it be capable of causing death or serious bodily injury."[49]

However, a review of the facts of that case demonstrates that the defendant brought himself well within the defined zone of danger for a knife. In *McCain*, the indictment alleged that the defendant did "use and exhibit a deadly weapon, to wit:

---

[47] *Id.*

[48] *Sellers v. State*, No. 10-14-00226-CR, at *8–9 (Tex. App.—Waco May 7, 2015 no pet. h.) (mem. op., not designated for publication) (citing *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (en banc)).

a knife, which in the manner of its use and intended use was capable of causing death or serious bodily injury."[50] At trial, the evidence showed that the defendant kicked in the door of the victim's kitchen and "hit her numerous times with his fist."[51] During the brutal attack, the victim saw a knife sticking out of the defendant's back pocket.[52] When the police later arrested the defendant, they discovered a butcher knife with a nine-inch blade on the defendant's person.[53] It can be inferred that since the defendant got close enough to the victim to strike the victim with his fist, he was within the zone of danger for a knife established in *Alvarez*.[54] As such, *McCain* created no exception for merely possessing a weapon when *not* within the zone of danger.

### B. The Officer was Not within the Danger Zone for a Knife when Appellant Had the Knife in His Hand.

The video captured by the officer establishes that a zone of several feet was maintained between the officer and Appellant during the time Appellant had the knife in his hand down by his side.[55] In fact, the Waco Court of Appeals specifically found that Appellant was "about five feet" from the officer when he

---

[49] *McCain*, 22 S.W.3d at 503.
[50] *Id.* at 499.
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *See Id.* at 613–14.

had the Gerber knife in his hand.[56] Appellant was simply too far away from the officer when he could have realistically deployed the knife in a deadly manner. Because the evidence is insufficient to show that the officer was within the zone of danger of a knife, the evidence does not support that the knife is deadly by use.[57] Therefore, this Court should grant Mr. Sellers' Petition for Discretionary Review.

### C. *The Waco Court Failed to Address the Zone of Danger.*

This Court holds that a "rigorous and proper application of this State's legal sufficiency standard" is an "exacting standard."[58] A memorandum should be "no longer than necessary to advise the parties of the court's decision and the basic reasons for it."[59] However, the Waco Court's memorandum on Mr. Sellers' case "exceeds what is permissible by failing to give any reason whatsoever for its conclusion that the evidence established[60] that the officer was within the zone of danger of the Gerber knife in Mr. Sellers' possession.

---

[55] State's Exh. 1: in-car video.
[56] *Sellers v. State*, No. 10-14-00226-CR, at *10.
[57] *Alvarez*, 566 S.W.2d at 613–14; *Fregia v. State*, 185 S.W. 11, 12 (Tex. Crim. App. 1916).
[58] *Brooks v. State*, 323 S.W.3d 893, 906 (Tex. Crim. App. 2010) (referencing *Jackson v. Virginia*, 443 U.S. 307 (1979)).
[59] TEX. R. APP. P. 47.4.
[60] *Citizens Nat'l Bank in Waxahachie v. Scott*, 195 S.W.3d 94, 96 (Tex. 2006).

The Waco Court's departure from the "accepted and usual course of judicial proceedings" calls for this Court to grant Mr. Sellers' Petition.[61] Texas Rule of Appellate Procedure 66.3(f) "may cover holdings by the courts of appeals with little or no significance beyond the particular cases in which they are made but that are so dramatically or blatantly incorrect that basic notions of fairness dictate that the wronged party may not be left without recourse."[62] Therefore, at a minimum, this Court should grant Mr. Sellers' Petition and order the Waco Court of Appeals to provide its basis for determining how the evidence supports a deadly weapon finding in light of controlling case law regarding the distance between a defendant with a knife and his purported victim.

## IV.   Conclusion

Finding the evidence legally sufficient to support a deadly weapon in Mr. Sellers' case required the Waco Court of Appeals to blatantly disregard Texas case law. Therefore, this Honorable Court should grant review. At the very least, this Court should demand an explanation from the Waco Court of Appeals as to how the evidence in his case supports a deadly weapon finding when the officer was outside the danger zone of Mr. Sellers and his knife.

---

[61]  Tex. R. App. 66.3(f).
[62]  43B George E. Dix et al., *Texas Practice Series: Criminal Practice and Procedure* § 57:32

## PRAYER FOR RELIEF

Mr. Sellers prays that this Court grant his Petition for Discretionary Review.

Respectfully submitted,

**LAW OFFICE OF SIMER & TETENS**

Chelsea Tijerina
3706 Bellmead Drive
Waco, Texas 76705
(254) 412-2300
(888) 317-7610—Facsimile
E-mail: attorneychelsea@gmail.com
State Bar No. 24076733
**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF SERVICE

On June 23, 2015, a copy of this Motion for Rehearing was delivered to the McLennan County District Attorney by facsimile.

Chelsea Tijerina

(3d ed. 2013).

# CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4
### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because:

   ■ this brief contains 3,450 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1) or,

   ☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. This brief complies with the typeface requirements and the type style requirements of TEX. R. APP. P. 9.4(e) because:

   ■ this brief has been produced on a computer in conventional typeface using Microsoft Word in Times New Roman 14 point font in the body of the brief and Times New Roman 12 point font in the footnotes.

   ☐ this brief is a typewritten document printed in standard 10 character per inch monospaced typeface.

Chelsea Tijerina
Attorney for Appellant



# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00226-CR

**STEPHEN KENNETH LANE SELLERS,**

                                                              **Appellant**

**v.**

**THE STATE OF TEXAS,**

                                                              **Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2013-2242-C1

## MEMORANDUM OPINION

Stephen Kenneth Lane Sellers was convicted of possession with the intent to deliver a controlled substance, that being methamphetamine, and sentenced to 40 years in prison. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (a), (c) (West 2010). Because the evidence was sufficient to support the conviction, the trial court's judgment is affirmed.

**BACKGROUND**

Waco Police Department Officer Cassie Price was patrolling a specific area of

town in the early morning hours looking for a suspect in a recent burglary. When she arrived at the area of the burglary, she turned off her headlights and noticed a man walking down the middle of the street. She turned on her headlights and the man ducked behind a parked car. She activated her overhead lights and the man emerged from behind the car, holding a knife and cell phone in one hand and a cigarette in the other. The man, who was identified as Sellers, was eventually arrested on an outstanding warrant. When the location where he had been hiding was searched after his arrest, a pouch containing a sellable amount of methamphetamine and delivery paraphernalia was found. Sellers was later charged with possession with the intent to deliver methamphetamine.

## SUFFICIENCY OF THE EVIDENCE

In two issues on appeal, Sellers asserts that the evidence was insufficient to show that he possessed or intended to deliver a controlled substance or that he used or exhibited a deadly weapon.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony,

to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

*Possession*

Sellers first argues that the evidence was insufficient to support the possession element of the offense.

To prove unlawful possession of a controlled substance, the State must prove

that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010) ("'Possession' means actual care, custody, control, or management."). Possession is not required to be exclusive. *Roberts v. State*, No. 10-14-00048-CR, 2015 Tex. App. LEXIS 78, *3-4 (Tex. App.—Waco Jan. 8, 2015, no pet. h.) (not designated for publication).

When the defendant is not in exclusive possession of the place where the controlled substance is found, then additional, independent facts and circumstances must link the defendant to the substance in such a way that it can reasonably be concluded that the defendant possessed the substance and had knowledge of it. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Id.* 405-406 (*quoting Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). Evidence which links the defendant to the controlled substance suffices for proof that he possessed it knowingly. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). It is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162; *Santiesteban-Pileta v. State*, 421 S.W.3d 9, 12 (Tex. App.—Waco 2013, pet. ref'd).

*Facts*

The evidence showed that Sellers was walking down a residential street at four in the morning. As a police car without its lights on approached, he concealed himself behind a parked vehicle. Once the officer, Cassie Price, activated her overhead lights, Sellers emerged from behind the vehicle holding a multi-tool utensil with the knife blade out. Price asked Sellers to drop the knife and step away from it. He complied. While speaking with Price during the encounter, Sellers used his cell phone and made at least one call, informing Price that he was talking to a girl.

After backup arrived, Sellers was arrested on an outstanding warrant. Price then decided to search the area behind the vehicle where Sellers had been hiding. There, she found a black pouch containing 2.46 grams of methamphetamine, a shattered glass pipe, a straw, a set of scales, a small tray, several baggies, and an amount of cash. A short time later, a woman, Sherri Vannatta, arrived on the scene. Vannatta advised Price that she had come at Sellers's request to get Sellers's belongings. She told Price that the black pouch was Sellers's, and identified the pouch and confirmed at trial that it was Sellers's. Further, Sellers's cell phone, which was searched later pursuant to a warrant, showed an unsent text message to Vannatta which referenced the black pouch.

*Application*

Although Sellers was not at the specific location at the time the methamphetamine was located, we find that the evidence sufficiently linked Sellers to

the drugs to support the possession element of the offense. Sellers would like us to review and give great scrutiny to links not present in this case. However, the absence of any of the various factors discussed in other cases does not constitute evidence of innocence to be weighed against the factors present in this case. *Santiesteban-Pileta v. State*, 421 S.W.3d 9, 15 (Tex. App.—Waco 2013, pet. ref'd).

### Intent to Deliver

Sellers also contends the evidence is insufficient to prove that he had the intent to deliver methamphetamine.

Intent to deliver may be established by expert testimony, such as testimony from experienced law enforcement, and by circumstantial evidence. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Terrell v. State*, 2011 Tex. App. LEXIS 5605 (Tex. App.—Waco July 20, 2011, pet. ref'd) (not designated for publication).

### Additional Facts

Some of the facts that support the element of possession also support the element of intent to deliver. Those facts do not bear repeating here. Additional facts supporting the intent to deliver element are as follows.

Sgt. John Allovio testified at trial that based on his experience as a drug enforcement officer, the amount of methamphetamine recovered from the black pouch could be sold in 25 units with a total cash value of $250. Reviewing the contents of

Sellers's cell phone, Allovio identified messages, such as "r u still holding anything or r u out," and "I still got some," that were consistent with drug-dealing and were conveyed in common drug culture language. Based on the amount of methamphetamine recovered, the scales, the individual dosage baggies, and the text messages, Allovio formed an opinion that the evidence was indicative of someone who would be selling narcotics. Further, Allovio testified that based on the totality of the circumstances, he had no doubt that the black pouch and its contents belonged to Sellers.

*Application*

Although the black pouch was not recovered from Sellers, it was identified as being his pouch. Further, what was in the pouch, along with text messages retrieved from Sellers's cell phone sufficiently indicated that Sellers intended to deliver the methamphetamine.

*Conclusion*

Accordingly, after considering all of the evidence in the light most favorable to the verdict, we determine that, based on that evidence and reasonable inferences therefrom, a rational jury could have found beyond a reasonable doubt that Sellers knowingly possessed the methamphetamine with the intent to deliver it.

Sellers's first issue is overruled.

*Deadly Weapon*

Sellers further contends the evidence was insufficient to support the deadly weapon finding made by the jury. Specifically, Sellers contends that the evidence was insufficient to show that the knife was, in fact, a deadly weapon.

What constitutes a "deadly weapon" is determined by Section 1.07 of the Texas Penal Code. TEX. PENAL CODE ANN. § 1.07 (West 2011); *Robertson v. State*, 163 S.W.3d 730, 732 (Tex. Crim. App. 2005). A deadly weapon includes anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or anything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury. *Id.* § 1.07(a)(17)(A), (B) (emphasis added). "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id.* § 1.07(a)(46).

Whether any particular knife is a deadly weapon by design or usage or not a deadly weapon at all depends on the evidence. *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). The plain language of the statute does not require the actor to actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). The placement of the word "capable" in the provision enables the statute to cover conduct

that threatens deadly force, even if the actor has no intention of actually using deadly force. *Id.*

Expert or lay testimony may be sufficient to support a deadly-weapon finding, and police officers can be expert witnesses with respect to whether a deadly weapon was used. *Tucker v. State*, 274 S.W.3d 688, 692 (Tex. Crim. App. 2008). Furthermore, the blade need not actually have caused any injuries for it to be considered a deadly weapon. *Id.* at 691.

The knife at issue was not introduced into evidence. It was, however, described as part of a multi-tool instrument that contained other utensils, such as a screwdriver and pliers, as well as the knife. Further, when the knife blade was out, it was locked in place. To put the knife blade away would require the blade to be unlocked.

Officer Price first saw the knife when Sellers emerged from behind the car where he had been hiding. When she saw what it was, she asked Sellers to put it down and step away from it. Price was concerned about the knife because she did not want to be stabbed. Price was by herself and was concerned that Sellers, seeing a uniformed officer, would still emerge from his hiding place carrying a blade. Price agreed that, in the manner of its intended use, the knife could have caused serious bodily injury.

On the video of the encounter between Sellers and Price, Sellers could be seen coming out from behind a vehicle with something in his right hand as soon as Price stopped her patrol unit. He continued to approach her until they were about 5 feet

apart. When Price asked to see what was in Seller's hand, he showed her the blade which appeared to be about 4 inches long. After Seller's put the knife down, he backed away a few more feet from Price.

After considering all of the evidence in the light most favorable to the verdict, we determine that, based on that evidence and reasonable inferences therefrom, a rational jury could have found beyond a reasonable doubt that the knife, at the very least, was a deadly weapon by the manner of its use or intended use.

Sellers's second issue is overruled.

## CONCLUSION

Having overruled each of Sellers's issues presented on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice


Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed May 7, 2015
Do not publish
[CRPM]

