

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00453-CR

Cody Shane **PIEPER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. A16199
Honorable N. Keith Williams, Judge Presiding

Opinion by:   Luz Elena D. Chapa, Justice

Sitting:      Rebeca C. Martinez, Justice
              Patricia O. Alvarez, Justice
              Luz Elena D. Chapa, Justice

Delivered and Filed:  August 8, 2018

AFFIRMED

Cody Shane Pieper appeals his conviction for aggravated assault with a deadly weapon. His sole issue is that there is legally insufficient evidence that he used a deadly weapon in the commission of the offense. We affirm the trial court's judgment.

### BACKGROUND

Pieper and Kenneth Clayburg were in a physical altercation outside of Pieper's residence. Clayburg was in the course of repossessing a car belonging to Pieper's girlfriend. During the altercation, Clayburg received two cuts to his back. Several neighbors, as well as Pieper's

girlfriend and her daughter, A.C., saw parts of the altercation or saw Pieper before or after the altercation.

The indictment alleged Pieper "intentionally or knowingly cause[d] bodily injury to Kenneth Clayburg by stabbing him with a knife, and did then and there use or exhibit a deadly weapon, to-wit a knife during the commission of said assault." The case proceeded to a jury trial, and Pieper pled not guilty. After both sides rested and presented closing arguments, the jury returned a guilty verdict and assessed punishment at fifty years in prison. The trial court imposed the sentence, and Pieper timely appealed.

## DISCUSSION

Pieper's sole issue on appeal is that there is legally insufficient evidence that he used a deadly weapon in the commission of the offense. In reviewing the legal sufficiency of the evidence, we must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We view all of the evidence in the light most favorable to the verdict. *Id.* We must defer to the jury's responsibility to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences. *Id.*

An assault is aggravated if the defendant uses or exhibits a deadly weapon during the assault. TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011); *Rivera v. State*, 271 S.W.3d 301, 304 (Tex. App.—San Antonio 2008, no pet.). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2017). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). "Bodily injury" is "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8).

"[A] knife is not a deadly weapon per se." *Rivera*, 271 S.W.3d at 304. However, "it can qualify as such through the manner of its use, its size and shape and its capacity to produce death or serious bodily injury." *Id.* "[W]hether a particular knife is a deadly weapon depends upon the evidence." *Id.* at 305. "The State may establish the knife was capable of causing death or serious bodily injury through witnesses' descriptions of the knife's size, shape, and sharpness; testimony of the knife's life-threatening capabilities; the manner in which the knife was used; the words spoken by the defendant; the physical proximity between the victim and the knife; and the nature of any wounds caused by the knife." *Id.* at 304. "Expert testimony is not required but it may be useful when the evidence on the deadly nature of the knife is meager." *Id.* "These, however, are just factors used to guide a court's sufficiency analysis; they are not inexorable commands." *Johnson v. State*, 509 S.W.3d 320, 323 (Tex. Crim. App. 2017).

## A. The Evidence

Because Pieper does not challenge the sufficiency of the evidence as to any other element of the aggravated assault offense, our analysis must focus on the evidence that Pieper used or exhibited a deadly weapon when assaulting Clayburg. Clayburg did not testify at trial. The evidence about whether Pieper used a deadly weapon consisted of testimony from other witnesses, a knife found in the grass close to Pieper's residence, photographs, and medical records.

A.C., the sixteen-year-old daughter of Pieper's girlfriend, testified she, her siblings, and her mother were at Big Lots, and Clayburg arrived to repossess the car they were driving. Clayburg drove A.C., her mother, and siblings back to their home, and A.C.'s mother called Pieper. A.C. testified that when they arrived home, Pieper approached the car and hit the driver's side window. A.C.'s mother went to park the car, and A.C. took her siblings across the street where A.C. watched Pieper and Clayburg's altercation. She said she saw "something small enough to fit in your hand that was black." A.C. testified Pieper threw the object into the backyard near the side of the house.

Joshua Gilbreath, a deputy with the Kerry County Sheriff's Office, was dispatched to the scene. He testified that when he pulled up to the scene, Pieper's niece Brittany Trevino approached and told him that Pieper had stabbed Clayburg in the back with a knife. Deputy Gilbreath stated Clayburg, who was also present, lifted up his shirt and showed him a wound on his back. Deputy Gilbreath testified there was a large amount of blood. Deputy Gilbreath also testified that when he detained Pieper, he saw that Pieper had a cut on his finger. Photographs of Pieper's cut and bleeding right hand were admitted into evidence.

Several of Pieper's neighbors, including Jeffrey Weatherford, Phillip Hall, and Fallon Hill, testified about what they saw. Weatherford and Hall stated they did not see a knife. Hill testified he saw that Pieper had an object in his hand, but could not tell whether it was a knife. Hill stated she assumed the object was a knife because of the way Pieper was holding the object. Like Weatherford and Hall, Pieper's girlfriend testified she did not see a knife or a stabbing.

Several other witnesses testified about what happened after the incident. A paramedic with the Kerrville Fire Department testified Clayburg refused treatment, other than having the wound cleaned and bandaged. A criminal investigator with the Kerr County's Sheriff's Office testified that the day after the incident, a knife with a black handle was found in the area where A.C. said Pieper had thrown the black object. The knife was admitted into evidence.

Carol Twiss, chief criminal investigator with the Kerr County Sheriff's Office, testified as an expert witness for the State. She opined that the black-handled knife was a deadly weapon capable of causing death or serious bodily injury. She also testified the holes in Clayburg's shirts were consistent with cutting or a stabbing. Twiss further testified that in nearly every case she has ever worked on, if the perpetrator has used a knife, he has a cut on his hand in the same area that Pieper's hand was cut.

The trial court also admitted documents, including photographs and medical records, into evidence. The photographs showed Clayburg and Pieper after the altercation; Clayburg's wounds; blood on Pieper's face, head, and hands; the area around the house where the altercation occurred; and the knife as it was found in the yard. Pieper's medical records note he had a laceration to his right pinky finger and a head injury.

**B. Analysis**

The evidence, viewed in a light most favorable to the verdict, supports an inference that Pieper cut or stabbed Clayburg with the black-handled knife found in the grass. The jury heard Deputy Gilbreath's testimony that Trevino told him Pieper stabbed Clayburg in the back with a knife. A.C. described the object in Pieper's hand as a black object, which he threw into the yard where the black-handled knife was found the following day. Several witnesses testified Pieper and Clayburg had a physical altercation. The jury saw photographs showing Clayburg sustained two lacerations on his back and heard testimony that Pieper sustained a laceration to his pinky finger. The jury saw several photographs depicting a significant amount of blood on Clayburg's back and on Pieper's head, face, and hands. The jury further heard expert witness testimony that Clayburg's wounds were consistent with being stabbed with a knife, and that the cut on Pieper's finger was consistent with having used a knife. Thus, we must consider whether the evidence shows the black-handled knife was capable of causing death or serious bodily injury. *See Rivera*, 271 S.W.3d at 304.

The knife itself was admitted into evidence. *See Robertson v. State*, 163 S.W.3d 730, 734 (Tex. Crim. App. 2005) (stating when knife is admitted into evidence, the factfinder has "the opportunity to examine the weapon and ascertain for itself whether the weapon had physical

characteristics that revealed its deadly nature").[1] We presume the jury observed the knife and its qualities, such as the knife's size, shape, and sharpness. *See id.* The photographs in the record show the knife was several inches long and appeared to be sharp. The jury could have further inferred from the photos of Clayburg's wounds, in conjunction with Twiss's expert testimony, that Pieper used the knife in a manner to slash or stab Clayburg in the middle of his upper back, and that the proximity of the knife and Clayburg were sufficiently close so as to enable Pieper to cut or stab Clayburg twice with the knife. Twiss testified that the knife's characteristics made it capable of causing death or serious bodily injury. Considering all of the evidence in a light most favorable to the verdict, we hold a jury rationally could have found the knife was, in the manner of its use or intended use, capable of causing death or serious bodily injury. We therefore hold there is legally sufficient evidence showing Pieper used a deadly weapon in the commission of the offense. *See Johnson*, 509 S.W.3d at 324 (holding knife that was a couple of inches long that defendant had brandished and waved at victim was a deadly weapon, even though the victim could not describe length, size, or shape of the blade).

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH

---

[1] This case is therefore distinguishable from *Rivera* and *Blain v. State*, 647 S.W.2d 293 (Tex. Crim. App. 1983), which Pieper relies on, because in those cases, the knife was not found and admitted in to evidence.