**Opinion filed August 21, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00232-CR

_____

## BALTAZAR MONJE-MORA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR38220**

## M E M O R A N D U M   O P I N I O N

Baltazar Monje-Mora appeals his jury conviction for aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a) (West 2011). Upon finding two prior felony convictions alleged for enhancement purposes to be true, the jury sentenced Appellant to confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of forty years. In a single issue, Appellant challenges the sufficiency of the evidence supporting his conviction.

Specifically, he contends that the evidence was insufficient to show that he used or exhibited a deadly weapon in committing the assault. We affirm.

*Background Facts*

The indictment alleged that, on or about July 3, 2010, Appellant intentionally, knowingly, and recklessly caused bodily injury to Jesse Gonzalez by cutting and stabbing him with a knife. The indictment further alleged that Appellant used and exhibited a deadly weapon, to wit: a knife, during the commission of the said assault.

Gonzalez testified that he was at a bar called "Club Libra" in Midland, Texas, on the night of July 2, 2010, when he went outside to the parking lot and found two men inside his pickup. Gonzalez identified Appellant as one of those men and noted that he was seated in the driver's seat of the pickup. When Gonzalez told the two men that they needed to get out of the pickup because it was his, the men claimed that the pickup belonged to them. To prove that the pickup was his, Gonzalez put his key in the pickup's ignition and started the vehicle.

Gonzalez testified that, as he attempted to go to the other side of the pickup, the man on the passenger's side grabbed him while Appellant stabbed him with a knife. Although Gonzalez did not see the item that was used to stab him, he stated that he knew it was a knife because he felt a blade go inside him. Gonzalez believed that he had been stabbed by the knife he kept in the center console of his pickup because he had left the knife in his pickup that night and it was gone after the attack.

Gonzalez explained that he was stabbed approximately ten times and that he suffered stab wounds under his chin, on both of his arms, and on the side of his stomach. Gonzalez stated that the injuries bled and that they caused him pain.

2

Gonzalez was treated by paramedics at the scene, but he refused to go to the hospital.

During cross-examination, Gonzalez stated that he was not certain that Appellant was the one who stabbed him. Gonzalez later clarified that he was sure that Appellant participated in the attack and that Appellant either stabbed him or held him while he was being stabbed.

Guadalupe Hernandez, the owner of Club Libra, testified that she refused to serve Appellant alcohol on the night of July 2, 2010, because he was intoxicated. Hernandez noted that she asked Appellant to leave and eventually had him escorted out of the bar. Hernandez recalled that Gonzalez came into the bar around midnight with blood dripping from his head and arm. Gonzalez asked Hernandez for help and told her that someone had just stabbed him. Hernandez then followed Gonzalez outside and Gonzalez identified Appellant as the person that stabbed him. Hernandez confronted Appellant about the situation, and Appellant hit her in the face.

Midland Police Department (MPD) Lieutenant B.J. Land testified that she responded to Club Libra in the early morning hours of July 3, 2010, after she received a call informing her that a stabbing had occurred there. Once Lieutenant Land arrived at Club Libra, she was informed that Appellant, the main suspect in the stabbing, had fled the scene. Lieutenant Land found Appellant in the nearby area and told him several times to stop. Appellant ignored Lieutenant Land's instructions and continued to walk away from the officer. Appellant was finally apprehended after another officer took him down to the ground. Lieutenant Land testified that a brief struggle ensued before Appellant was detained. Lieutenant Land then searched Appellant and found a "folding pocketknife" in his pocket.

Lieutenant Land turned the knife over to another officer who logged it in as evidence. The knife was admitted into evidence during Gonzalez's testimony

3

based upon his identification of it as as the knife that he had left in his pickup. Gonzalez specifically identified the knife as the knife that Appellant used to stab him.

MPD Officer Juan Gutierrez testified that he also responded to the scene at Club Libra on July 3, 2010. Once he arrived at the scene, he interviewed Gonzalez and noted that Gonzalez was upset, shaking, and bleeding from his head and torso. Gonzalez told Officer Gutierrez that Appellant had stabbed him but that he was not sure what Appellant had used to stab him.

MPD Detective Kay Therwhanger testified that she interviewed Gonzalez at the police station. Gonzalez told her that he had been stabbed but that he did not know what his assailant had used to stab him. Detective Therwhanger photographed Gonzalez's injuries, and she recalled that he had what appeared to be blood on his jeans and boots.

Forensic Scientist Naomi McDonald testified as an expert in the field of DNA analysis and comparison. McDonald stated that she conducted DNA analysis on the shorts, shirt, socks, and boots Appellant was wearing at the time of his arrest. McDonald noted that Appellant's shorts tested positive for blood and that this blood matched the DNA profile obtained from a buccal swab taken from Gonzalez. McDonald also tested the knife that Lieutenant Land took from Appellant, and she determined that the knife tested negative for blood. McDonald explained that any evidence on the knife could have easily been removed by cleaning the knife.

*Analysis*

We review a sufficiency of the evidence issue, regardless of whether it is denominated as a legal or factual claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—

4

Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we defer to the jury's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Appellant argues that the evidence presented at trial was insufficient to show that he used or exhibited a deadly weapon. He contends that the State failed to directly link the knife it offered into evidence to the stabbing. Appellant also argues that Gonzalez suffered only "slight" stab wounds.

Under the variant of the offense of aggravated assault with which Appellant was charged, a person commits an offense if he commits an assault and "uses or exhibits a deadly weapon during the commission of the assault" *See* PENAL § 22.02(a)(2). A deadly weapon is "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or . . . anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." PENAL § 1.07(a)(17) (West Supp. 2013); *see McCain v. State*, 22 S.W.3d 497, 502–03 (Tex. Crim. App. 2000). "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death,

5

serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." PENAL § 1.07(a)(46).

A knife is not a deadly weapon per se. *See Robertson v. State*, 163 S.W.3d 730, 732 (Tex. Crim. App. 2005); *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). The description of an object as a "knife" does not by itself establish the object as a deadly weapon by design because many types of knives have an obvious other purpose. *Robertson*, 163 S.W.3d at 732. However, a knife can still be shown to be a deadly weapon if "in the manner of its use or intended use," the knife "is capable of causing death or serious bodily injury." *See* PENAL § 1.07(a)(17)(B). The placement of the word "capable" is crucial to understanding this method of determining deadly weapon status. *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). The State is not required to show that the "use or intended use causes death or serious bodily injury" but that the "use or intended use is *capable* of causing death or serious bodily injury." *Id.* A jury may consider several factors when considering whether an object is a deadly weapon, including (1) the words of the accused, (2) the intended use of the weapon, (3) the size and shape of the weapon, (4) testimony by the victim that he feared death or serious bodily injury, (5) the severity of any wounds inflicted, (6) the manner in which the assailant allegedly used the object, (7) physical proximity of the parties, and (8) testimony as to the weapon's potential for causing death or serious bodily injury. *Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

The State was required to prove that Appellant used a knife to cause bodily injury to Gonzalez and that, in the manner that Appellant used or intended to use the knife, the knife was capable of causing serious bodily injury or death. Gonzalez identified the knife recovered from Appellant as the knife that he had left in the console of his vehicle. He also testified that he was sure he had been

stabbed by a knife because he felt the blade go inside him. Furthermore, Detective Therwhanger stated her belief that Gonzalez's injuries had been caused by "a sharp, thin edge," and Detective Rosie Rodriguez noted her belief that the injuries were caused by a "sharp instrument." Gonzalez's identification of the knife, coupled with his injuries from a knife, provided a basis for a rational trier of fact to conclude that the knife recovered from Appellant was the knife that he used to assault Gonzalez.

Detectives Therwhanger and Rodriguez both testified that the knife could be used to cause death or serious bodily injury. *See Tucker*, 274 S.W.3d at 692 (stating that police officers can be expert witnesses with respect to whether a deadly weapon was used). Gonzalez testified that he was stabbed approximately ten times and suffered lacerations to his head, neck, arms, and torso that caused him to lose blood and suffer pain. Photographs of Gonzalez's injuries were shown to the jury, and these photographs paralleled the testimony given by Gonzalez. As noted by the State in its brief, some of Gonzalez's stab wounds occurred in locations near vital organs or arteries, including one on his forehead directly above his right eye, one underneath his chin near his neck, and multiple wounds on the left side of his abdomen. Additionally, the stab wounds occurred as a result of a struggle with one assailant holding Gonzalez while Appellant stabbed him. Gonzalez was very fortunate that he did not sustain more serious injuries. The fact that Gonzalez did not suffer a serious injury does not preclude a finding that the weapon that caused his wounds was capable, in its manner of use, of causing serious bodily injury. *See Tucker*, 274 S.W.3d at 692. When viewed in the light most favorable to the verdict, we conclude that the evidence was sufficient for a rational jury to determine that Appellant used a weapon capable of causing death or serious bodily injury to assault Gonzalez. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

JUSTICE

August 21, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

8